NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0327n.06
Filed: May 9, 2007

No. 06-3034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RENE CABRERA-RAMOS, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | ON REVIEW FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| *Respondent*. | ) | |

BEFORE:     COLE, SUTTON, and COOK, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.** Petitioner Rene Cabrera-Ramos, a citizen and native of El Salvador, seeks review of a Board of Immigration Appeals' (BIA) decision affirming an immigration judge's order that Cabrera-Ramos abandoned his claim for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3)(A), and protection under the United Nations Convention Against Torture (CAT), 8 C.F.R. § 208.16(c)(2). Cabrera-Ramos argues that the BIA erred in holding that the immigration judge provided adequate notice of the filing deadline for Cabrera-Ramos's withholding-of-removal application and, therefore, his failure to file that application by the deadline should have been excused. Cabrera-Ramos contends that this amounted to an abuse of discretion and a denial of due process. He further contends that the BIA abused its discretion when it failed to remand his case to

the immigration court after he submitted a completed withholding-of-removal application with his

BIA appeal. For the following reasons, we **AFFIRM** the decision of the BIA and **DENY** the petition

for review.

## I. BACKGROUND

Around 1993, Cabrera-Ramos unlawfully entered the United States via Mexico. In 1997, the

Immigration and Naturalization Service initiated removal proceedings against him under section

212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), for entering the United States illegally. At

his removal hearing, appearing pro se, Cabrera-Ramos filed for Temporary Protective Status (TPS),

as provided in 8 U.S.C. § 1154a, and removal proceedings against him were administratively closed.

A year later, when his TPS period ended, Cabrera-Ramos failed to file the necessary paperwork to

extend his TPS, and his removal case was accordingly put back on the active docket.

At his second removal hearing, in November 2003, Cabrera-Ramos again appeared pro se.

After Cabrera-Ramos requested time to retain an attorney, the immigration judge postponed the

hearing. When the hearing resumed four months later, Cabrera-Ramos still appeared without counsel

because he apparently "did not like what the lawyer was offering [him]." The immigration judge

deemed this a waiver of his right to an attorney. Cabrera-Ramos also refused the immigration judge's

offer to have an interpreter present. Cabrera-Ramos then, for the first time, expressed a desire to

apply for withholding of removal based on "political opinion." Because Cabrera-Ramos did not have

a completed I-589 form[1] (or "withholding-of-removal application") in hand, the immigration judge

---

[1]The I-589 is a standard form (on white-colored paper) issued by the Department of
Homeland Security and the Department of Justice titled, "Application for Asylum and for

scheduled another hearing to provide Cabrera-Ramos with time to complete the application and submit it to the court. The immigration judge then (1) set April 12, 2004, as the application's filing deadline and warned Cabrera-Ramos that failure to submit the form would result in a decision without a hearing; (2) set a deadline of August 7, 2004 for submission of evidence; and (3) scheduled a hearing on the application for August 17, 2004. Cabrera-Ramos asked whether he could have an attorney present at this next hearing. The immigration judge said that he could and provided him with a list of legal-aid organizations in the area. She also gave Cabrera-Ramos a green-colored form for his lawyer (if he retained one) to complete and mail to the court by the hearing date. Cabrera-Ramos was not provided at any time with written notice of these deadlines.

Cabrera-Ramos never filed an I-589 application for withholding of removal with the immigration court on or before April 12, 2004. Four days later, on April 16, as warned, the immigration judge issued a written decision (1) finding that Cabrera-Ramos had abandoned his request for withholding of removal, (2) granting him voluntary departure back to El Salvador, and (3) ordering him removed if he violated the voluntary-departure order.

Through counsel, Cabrera-Ramos timely appealed the immigration judge's decision to the BIA and submitted with his brief a completed I-589 form indicating a desire to apply for two forms of withholding of removal, but expressly disclaiming a desire to apply for asylum. Cabrera-Ramos argued to the BIA that he was improperly deprived of an opportunity to apply for withholding of removal and CAT relief as a result of the immigration judge's allegedly confusing and misleading

Withholding of Removal." This form is used by aliens who wish to apply for any combination of (1) asylum, (2) withholding of removal under the INA, and (3) withholding of removal under CAT.

instructions regarding the multiple deadlines (i.e., the I-589 deadline, the deadline for submitting evidence, the green lawyer form, and the hearing date). The BIA (1) found that the immigration judge gave Cabrera-Ramos adequate notice of the I-589 filing deadline and the consequences of untimeliness, (2) concluded that the immigration judge was not required to give Cabrera-Ramos separate written notice of other filing deadlines, and (3) declined to remand Cabrera-Ramos's case for consideration of his untimely withholding-of-removal application because he did not establish prima facie eligibility for relief. Cabrera-Ramos appealed.

## II. DISCUSSION

Cabrera-Ramos advances three interrelated arguments—all depend on Cabrera-Ramos's allegation that the immigration judge's statements regarding the I-589 filing deadline were confusing and misleading: (1) the BIA abused its discretion when it deemed abandoned his application for withholding of removal; (2) Cabrera-Ramos's Fifth Amendment Due Process rights were violated when he was denied a full and fair hearing on his application for withholding of removal; and (3) the BIA erroneously failed to remand his case despite Cabrera-Ramos establishing prima facie eligibility for withholding of removal.

### A. Adequacy of Notice

Because all of Cabrera-Ramos's claims rely, to some extent, on his argument that the immigration judge's statements regarding the I-589 filing deadline were confusing and misleading, we begin by addressing whether Cabrera-Ramos received adequate notice of this deadline.

This Court has explained that "adequacy of notice is consistently regarded as a finding of mixed fact and law." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (citing

*Burkart v. Post-Browning, Inc.*, 859 F.2d 1245, 1249 (6th Cir. 1988)). Factual and legal aspects of

notice are distinguished as follows:

> [T]he question of whether any notice was given, and if so, what the notice consisted
> of and when it was given, is one of fact. However, the question of whether the notice
> satisfied the statutory requirement is one of law. Thus, the issue of notice . . . presents
> a mixed question of fact and law.

*Id*. (quoting *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982)).

In the context of immigration appeals, this Court reviews de novo questions of law and mixed

questions of law and fact. *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005); *accord*

*Hong Ying Gao v. Gonzales*, 440 F.3d 62, 65 (2d Cir. 2006). This Court therefore reviews de novo

the BIA's determination that a petitioner received adequate notice of a filing deadline.

Cabrera-Ramos does not dispute that 8 C.F.R. § 1003.31(c) provides an immigration judge

with authority to set time limits for filing applications and to deem the opportunity to file waived

when an application is not filed by the deadline.[2] *See also, e.g.*, *Hassan v. Gonzales*, 403 F.3d 429,

436 (6th Cir. 2005) (holding that the immigration judge had authority to exclude documents under

8 C.F.R. § 1003.31(c) that were submitted after the filing deadline). Cabrera-Ramos instead argues

that the immigration judge did not provide adequate notice of the filing deadline.

Although neither the relevant regulation nor case law describes what constitutes "adequate

---

[2]8 C.F.R. § 1003.31(c) reads as follows:

> The Immigration Judge may set and extend time limits for the filing of applications
> and related documents and responses thereto, if any. If an application or document
> is not filed within the time set by the Immigration Judge, the opportunity to file that
> application or document shall be deemed waived.

notice," guidance regarding the Fifth Amendment's guarantee of due process helps inform the minimum notice required. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). In this context, "due process requires notice reasonably calculated to provide actual notice of the proceeding and a meaningful opportunity to be heard." *Nazarova v. INS*, 171 F.3d 478, 482–83 (7th Cir. 1999). A review of the record reveals that the immigration judge's statements at the March 22 hearing regarding the I-589 deadline amounted to adequate notice.

At the March 22 hearing, the immigration judge explained the process of applying for withholding of removal and apprised Cabrera-Ramos of three critical dates: (1) the I-589 filing deadline—April 12; (2) the deadline for evidence—August 7; and (3) the hearing date—August 17. During this colloquy, the immigration judge stated three times the importance of, and consequences from, not adhering to these deadlines. Cabrera-Ramos at no point expressed confusion or asked for clarification. The relevant portion of this colloquy is as follows:

> [Immigration Judge:] Well, you have to fill [out the withholding of removal application] and get it to me and we will have a hearing. How lengthy a hearing—well, let's see. You have to fill out the form, I 589 and send me two copies. . . .
>
> . . .
>
> [Immigration Judge:] Okay, Okay. I am going to schedule this, to hear your case. If you don't file on time, then we have to decide it without a hearing. Okay, August 17, at 1:00 o'clock.
>
> [Cabrera-Ramos:] Okay.

[Immigration Judge:] Now you have to file that application with me by—I'll give you three weeks.

[Cabrera-Ramos:] (Indiscernible)

[Immigration Judge:] April 12, I have to have it. If I don't have it by then, you just mail it. If I don't have it by then, then I am going to make a decision in your case without waiting for any further hearing. I assume you would rather be allowed to leave voluntarily instead of being deported.

. . .

[Immigration Judge:] All right, so I am scheduling the hearing for August 17. Now do you need an Interpreter?

[Cabrera-Ramos:] No, ma'am.

[Immigration Judge:] I think we will have one here anyway. You bring all of your witnesses, and your evidence has to come in at least by August 7. So, your deadline, that is papers, is August 7. And, you can submit documents, you can bring witnesses. The Government has the same right. Both can object to evidence and object to questions. Do you understand?

[Cabrera-Ramos:] (No audible response).

. . .

[Immigration Judge:] There are serious problems if you don't come to court. You would be ineligible for ten years for change of status or voluntary departure, unless an exceptional circumstance, such as serious illness, death of immediate relative is the cause of the absence. Do you understand?

[Cabrera-Ramos:] Yes, your honor.

. . .

[Immigration Judge:] Any questions?

[Cabrera-Ramos:] Yes, can I bring a lawyer with me next time I come?

[Immigration Judge:] Yes. The lawyer has to fill out the green form. Make sure the

lawyer is prepared to go, okay?

[Cabrera-Ramos:] Do I need to mail them to you before I come to court?

[Immigration Judge:] That would be a good idea. It is not absolutely required, but it would certainly be a good idea.

[Cabrera-Ramos is handed a green form and a list of legal-aid organizations in the area.]

[Cabrera-Ramos:] I will have copies and I will mail it to you.

[Immigration Judge:] Yes, that is due by April 12 or else I will cancel the hearing, do you understand?

[Cabrera-Ramos:] Yes, ma'am.

(Joint Appendix (JA) 55-59.)

Cabrera-Ramos concedes that the immigration judge stated that April 12, 2004, was the due date for the I-589 form. But he argues that (1) in the context of specifying the two other dates (i.e., for the submission of evidence and for the hearing), the April 12 deadline was confusing, particularly to someone with a fifth-grade education; (2) the immigration judge never clearly asked whether Cabrera-Ramos understood the filing requirements for the withholding-of-removal application; and (3) he was never provided with written notice of the filing deadline.

Although it perhaps may be the better practice for immigration judges to ask aliens whether they understand the filing requirements and to provide them with written notice, nothing in the relevant code or regulations compels this practice. *See* 8 C.F.R. § 1003.31(c) (silent as to the form of notice); *Hussain v. Gonzales,* 424 F.3d 622, 626–27 (7th Cir. 2005) (approving orally stated deadline unaccompanied by written notice); *Quinones v. Gonzales*, 161 F. App'x 836, 837 (11th Cir.

2006) (per curiam) (same); *Rageevan v. Gonzales*, 151 F. App'x 751, 756 (11th Cir. 2005) (per curiam) (same).

The record is clear. The immigration judge stated that Cabrera-Ramos had three weeks to submit the completed I-589 form and correctly calculated and set the due date as April 12, 2004. This alone was sufficient to provide Cabrera-Ramos with actual notice of the application's deadline. *See Nazarova*, 171 F.3d at 482–83 ("due process requires notice reasonably calculated to provide actual notice of the proceeding"). If Cabrera-Ramos was confused or did not understand the deadline, the onus was on him to seek clarification or to object. *See, e.g.*, *Quinones*, 161 F. App'x at 837 ("Although [petitioner] states that he misunderstood the date he was to file the application, the record does not reflect that he made any mention or objection regarding any miscommunications during the proceedings."); *Rageevan*, 151 F. App'x at 756 ("Although [petitioner] argues that there were some miscommunications with the translator during his removal proceedings, the record does not reflect that he made any mention or objection regarding these purported miscommunications during the proceedings, and therefore he fails to state a due process violation.").

Nor can Cabrera-Ramos plead ignorance regarding the importance of deadlines. He was apprised numerous times of the high stakes of untimeliness. Throughout the proceedings, the immigration judge made clear that if Cabrera-Ramos did not strictly follow the relevant deadlines, serious consequences would follow. (*See, e.g.*, JA 40–41 ("Now it is very important, sir, that you send us a form E-33 anytime that you move from your address to the court because if you don't send that, and your case comes back to the court, and you don't appear, you will be ordered deported in your absence. . . . [Y]ou will be barred from certain relief under the immigration laws for a period

of 10 years. This relief includes voluntary departure, Cancellation of Removal, and the ability to change or adjust your immigration status."); JA 48–49 ("There are serious consequences if you don't come to court whenever scheduled. If you don't come to court, you will be ineligible for ten years from many forms of relief including changes of status or voluntary departure for ten years."); JA 58–59 ([Immigration Judge:] "Yes, that is due by April 12 or else I will cancel the hearing, do you understand? [Cabrera-Ramos:] Yes, ma'am.").) Based on these admonitions, even assuming Cabrera-Ramos was confused about what exactly was due on April 12, it was imprudent for Cabrera-Ramos to take a wait-and-see approach and allow April 12, 2004, to pass without submitting anything to the court.

Moreover, Cabrera-Ramos's own actions undercut any argument that he misunderstood the I-589 deadline. The immigration judge expressly mentioned the April 12 deadline twice and referred to it indirectly when she instructed Cabrera-Ramos that he had "three weeks to file the application." Cabrera-Ramos surely must have believed that something was due on April 12. If nothing else, had Cabrera-Ramos been truly confused about the three dates (April 12, August 7, and August 17), one would expect that he would have submitted *something* to the immigration court by April 12, 2004, if even the wrong document. Cabrera-Ramos's failure to submit anything to the court by April 12—for instance, the green lawyer form or evidence—negates his argument that he was confused about the April 12 deadline and believed some other document was due. Cabrera-Ramos cannot plausibly maintain, based on the record, that he was altogether unaware of an April 12 deadline as to *some* document.

Confronted with these arguments, Cabrera-Ramos contends that any misunderstanding is not

fairly attributable to him because he has only a fifth-grade education, was proceeding pro se, and lacked a translator. First, this argument ignores that the previous hearing (on November 10, 2003) was continued for the very purpose of Cabrera-Ramos retaining an attorney. Yet, four months later, at the March 22 hearing, Cabrera-Ramos appeared without counsel because he "did not like what the lawyer was offering [him]." (JA 51.) Second, it was Cabrera-Ramos himself who refused the assistance of an interpreter as unnecessary. (*See* JA 51 ("[Immigration Judge:] Do you need an interpreter? [Cabrera-Ramos:] No, ma'am, I don't need it.").) In any event, a translator was ultimately present at the March 22 hearing anyway.

In sum, the immigration judge provided Cabrera-Ramos with adequate notice of the April 12, 2004 deadline for filing the I-589 application for withholding of removal with the court. Any alleged confusion that Cabrera-Ramos may have experienced should have been cleared up at the hearing by Cabrera-Ramos alerting the immigration judge; otherwise, the BIA properly charged Cabrera-Ramos with having notice of the April 12 deadline.

**B.      Waiver of Application for Withholding of Removal**

Cabrera-Ramos contends that he did not waive his right to apply for withholding of removal because the immigration judge's statements regarding the I-589 deadline were confusing and misleading. "Because the [immigration judge]'s decision regarding waiver is discretionary, it is reviewed for an abuse of discretion." *Hassan v. Gonzales*, 152 F. App'x 177, 180 (3d Cir. 2005) (citing *Witter v. INS*, 113 F.3d 549, 555–56 (5th Cir. 1997)). "An abuse of discretion can be shown when the [immigration judge] or [BIA] offers no 'rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a

particular race or group.'" *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982) (per curiam)).

Cabrera-Ramos's argument is meritless. As we have noted, the record reflects that the immigration judge adequately apprised Cabrera-Ramos of the April 12 deadline. Based on the immigration judge's authority under 8 C.F.R. § 1003.31(c) to set and enforce application deadlines, the immigration judge acted well within her discretion when she deemed Cabrera-Ramos to have waived the opportunity to file the I-589 after he failed to file anything with the court on or before April 12, 2004. *See, e.g.*, *Kuschchak, v. Ashcroft*, 366 F.3d 597, 602 (7th Cir. 2004) (upholding immigration judge's decision that petitioner had abandoned his withholding-of-removal application where petitioner missed deadline set by immigration judge under 8 C.F.R. § 1003.31(c)); *Quinones,* 161 F. App'x at 837 (same); *Hassan,* 403 F.3d at 436 (upholding immigration judge's rejection of letter submitted after deadline set by immigration judge under 8 C.F.R. § 1003.31(c) where petitioner presented no good cause for untimeliness); *Lin v. Gonzales,* 152 F. App'x 475, 482 (6th Cir. 2005) (upholding immigration judge's rejection of letters submitted after deadline set by immigration judge under 8 C.F.R. § 1003.31(c)); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 765 (8th Cir. 2004) (upholding immigration judge's refusal to admit evidence submitted after deadline set by immigration judge under 8 C.F.R § 1003.31(c)).

## C.     Due-Process Violation

Next, Cabrera-Ramos contends that his due-process rights under the Fifth Amendment were violated because he was denied a full and fair hearing on his application for withholding of removal, after the immigration judge deemed his right to apply waived. This Court reviews de novo whether

a BIA's decision deprives a petitioner of his Fifth Amendment due-process rights. *Denko,* 351 F.3d at 726.

"Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). "A violation of due process occurs when 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Hassan*, 403 F.3d at 436 (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)). To prevail on a due-process challenge to deportation proceedings, an alien must show (1) error, and (2) substantial prejudice. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). Because Cabrera-Ramos can show neither error nor substantial prejudice, his due-process challenge must fail.

First, the immigration judge provided Cabrera-Ramos with adequate notice of the I-589 filing deadline. Thus, based on this alone, Cabrera-Ramos cannot establish a due-process claim because there was no error when the BIA deemed his right to apply waived.

Second, even assuming that notice was constitutionally deficient, Cabrera-Ramos fails to establish substantial prejudice. In this context, "'[a] showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; we will not simply presume prejudice.'" *Id.* (quoting *Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000)). Here, Cabrera-Ramos maintains that he suffered "significant prejudice" because he was deprived of an opportunity to file for withholding of removal and that he will face significant harm if returned to El Salvador based on his political opinion. This does not establish prejudice. A petitioner must at least produce "concrete evidence indicating that the due process violation had the potential for

affecting the outcome of the hearing." *Kuschchak*, 366 F.3d at 602 (citations and quotation marks omitted). Cabrera-Ramos fails to argue that the outcome of the hearing would have been different had the immigration judge or the BIA considered his untimely application. In any event, even if Cabrera-Ramos had made this argument his untimely I-589 application does not establish prima facie eligibility for withholding of removal. Therefore, for this reason as well, he cannot establish a due-process violation.

**D.     BIA's Failure to Remand for Consideration of Application for Withholding of Removal Under the INA and CAT**

Finally, Cabrera-Ramos contends that the completed I-589, submitted with his BIA appeal, establishes prima facie eligibility for withholding of removal and, therefore, the BIA abused its discretion when it failed to remand his case. Because the BIA does not engage in factfinding, *see* 8 C.F.R. § 1003.1(d)(3), the BIA properly treated the inclusion of the completed I-589 with Cabrera-Ramos's appeal as a request to remand the case to the immigration court for consideration of the application. The BIA's decision not to remand is reviewed for an abuse of discretion. *Fieran v. INS*, 268 F.3d 340, 344 (6th Cir. 2001). The BIA's decision is conclusive "unless manifestly contrary to law." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).

Cabrera-Ramos's argument is groundless. The BIA rejected Cabrera-Ramos's implicit remand request for two independent reasons:

> To the extent the respondent seeks a remand based on this completed application, we would deny such a request. . . . [1] [T]he respondent did not file this application in a timely manner in the proceedings conducted below. [2] In any event, he indicates on his application that he is seeking only withholding of removal and protection under [CAT], not asylum. However, his responses to the questions posed do not establish, even on a prima facie basis, that it is more likely than not that he will be

persecuted in El Salvador in the future on account of an enumerated ground, or that it is more likely than not that he will be tortured by government officials or with their consent or acquiescence in El Salvador upon returning to his homeland.

(JA 5.) Either of these grounds alone is sufficient to support the BIA's decision not to remand Cabrera-Ramos's case.

First, based on the untimeliness of Cabrera-Ramos's application, the BIA did not abuse its discretion in failing to remand his case. *See* 8 C.F.R. § 1003.31(c) (providing immigration judge with authority to set time limits for filing applications and to deem them waived if not submitted by the deadline).

Second, the BIA may deny a motion to remand where "the movant has not established a prima facie case for the underlying substantive relief sought." *INS v. Abudu*, 485 U.S. 94, 104 (1988) (addressing motions to reopen); *Pilica v. Ashcroft*, 388 F.3d 941, 946 n.3 (6th Cir. 2004) (treating motions to remand as equivalent to motions to reopen); *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986) (holding that motions to reconsider cannot be granted except upon a "prima facie showing that the statutory requirements for the underlying relief have been met"). Cabrera-Ramos's withholding-of-removal application stated that he feared returning to El Salvador for the following reasons:

> I am afraid that I will not be able to get a job, be beaten up, and even killed for having been in the United States for so long. They assume that because I have been in the United States that I have money. The[y] will resent me for this and I fear I could be killed for these reasons. I will also be viewed as being against the current government and harmed due to my political opinion. Based on my situation and the current circumstances in El Salvador, I will face significant harm from the Government or groups the Government is unwilling and/or unable to control.

(JA 29.) The BIA did not err when it concluded that none of these reasons presented prima facie eligibility for withholding of removal under the INA or CAT.

1.      Withholding of removal under the INA

To qualify for withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), an otherwise-deportable alien must demonstrate that there is a clear probability that, if forced to return to the country of removal, he will be subject to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See INS v. Stevic*, 467 U.S. 407, 425 (1984); 8 U.S.C. § 1231(b)(3)(A).

As a preliminary matter, Cabrera-Ramos's assertion that he will be persecuted in El Salvador because he has "been in the United States for so long" and will be viewed as having money is not one of the enumerated grounds for protection under 8 U.S.C. § 1231(b)(3)(A). This does not assist his claim.

Cabrera-Ramos's assertion that he will be viewed as being against the government and harmed because of his political opinion is indeed a protected category under the INA. Cabrera-Ramos fails, however, to mention what his political opinion is or why he would be harmed in El Salvador for having this particular political opinion. Under these circumstances, we cannot say that the BIA abused its discretion in refusing to remand this case where Cabrera-Ramos failed to even mention his political opinion—the very cause of the alleged persecution in El Salvador. Such bare, unspecific, and conclusory assertions cannot establish a prima facie case for withholding of removal. *See, e.g.*, *Conteh v. Gonzales*, 461 F.3d 45 (1st Cir. 2006) (no prima facie showing where eligibility based on assertions unaccompanied by supporting documentation).

2.      Withholding of removal under CAT

An applicant for withholding of removal under CAT bears the burden of proving "that it is

more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (2000); *see also Ali*, 237 F.3d at 596–97. "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including . . . other relevant information regarding conditions in the country of removal." *Id*. § 208.16(c)(3). Withholding of removal under CAT involves a separate question of the threat of torture without regard to the five enumerated grounds for asylum. It is possible, therefore, for an applicant to succeed on a withholding claim under CAT even though a withholding claim under the INA is denied. *Singh v. Ashcroft*, 398 F.3d 396, 405 (6th Cir. 2005).

Here, Cabrera-Ramos presented no evidence to the BIA establishing the possibility of torture if he is returned to El Salvador, nor any evidence that pain or suffering will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Cabrera-Ramos has presented nothing beyond bare assertions that he will be harmed if returned to El Salvador. As with his request for withholding of removal under the INA, the BIA did not abuse its discretion when it declined to remand Cabrera-Ramos's case, after determining that he had failed to establish a prima face case for withholding of removal under CAT. *See, e.g.*, *Lekaj v. INS,* 85 F. App'x 508, 514 (6th Cir. 2004) (upholding BIA's decision not to remand where alien failed to establish prima facie case for withholding of removal under CAT).

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the BIA and **DENY** Cabrera-

Ramos's petition for review.